**U.S. BANKRUPTCY COURT
DISTRICT OF OREGON**
**F I L E D**
**May 18, 2006**
**Clerk, U.S. Bankruptcy Court**

**Below is an Order of the Court.**

_____
RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | ) Bankruptcy Case |
| | ) No. 06-30053-rld13 |
| ROBERT EUGENE STEWART and TERRI LENETTE STEWART, | ) |
| | ) |
| Debtors. | ) |
| _____ | ) |
| ROBERT EUGENE STEWART and TERRI LENETTE STEWART, | ) |
| | ) |
| | ) Adv. Proc. No. 06-3135-rld |
| Plaintiffs, | ) |
| | ) |
| v. | ) MEMORANDUM OPINION |
| | ) |
| PACIFIC COAST RECOVERY SERVICE, INC., an Oregon corporation, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

In this adversary proceeding ("Adversary Proceeding"), the debtor plaintiffs, Robert and Terri Stewart (the "Stewarts"), seek a declaratory judgment that the defendant Pacific Coast Recovery Service, Inc.'s ("Pacific") claims against the Stewarts were discharged in the Stewarts' prior chapter 7 case and that Pacific's judgment liens against

Page 1 - MEMORANDUM OPINION

the Stewarts' residence property are void as having been obtained in violation of the automatic stay of 11 U.S.C. § 362(a)(4).[1] The Stewarts have filed a Motion for Judgment on the Pleadings, to which Pacific has responded and has made its own Motion for Judgment on the Pleadings.

I heard argument on the competing motions at a hearing (the "Hearing") on May 2, 2006. Following the Hearing, I have reviewed the pleadings and memoranda filed by the parties in the Adversary Proceeding and relevant records of this court, as well as applicable legal authorities. I have considered carefully the parties' arguments in light of the record. I find in favor of the Stewarts that Pacific's claims against them individually were discharged in the Stewarts' prior chapter 7 bankruptcy, but I find that Pacific is entitled to a declaratory judgment that its judgment liens against the Stewarts' residence property were not voided by operation of the automatic stay in the Stewarts' prior chapter 7 bankruptcy. I state the reasons for my decisions as follows:

## Factual Background

The facts in this matter are not in dispute. Pacific filed default papers against the Stewarts in two Washington County Circuit Court actions, case number C031228CV and case number C032134CV, on or about October 9, 2003. On October 10, 2003, a judgment was signed and filed by Judge Nachtigal in case number C031228CV awarding Pacific $79,556.20, including principal of $73,150, prejudgment interest of

---

[1] Unless otherwise noted, all statute section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. The provisions of Section 362 considered in this Memorandum Opinion were not altered by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

Page 2 - MEMORANDUM OPINION

$5,464.20, attorney fees of $500 and costs of $442, plus postjudgment interest at 9%. On October 10, 2003, a judgment was signed and filed by Judge Nachtigal in case number C032134CV awarding Pacific $12,365.02, including principal of $10,986.86, prejudgment interest of $436.16, attorney fees of $500, and costs of $442, plus postjudgment interest at 9%. The judgment in case number C032134CV was docketed by the Washington County Circuit Court clerk (the "Clerk") in the court's register on October 14, 2003, at 10:15 a.m. The judgment in case number C031228CV was docketed by the Clerk in the court's register on October 14, 2003, at 10:35 a.m. Hereafter, Pacific's two default judgments entered against the Stewarts in Washington County Circuit Court are referred to collectively as the "Judgments."

Meanwhile, the Stewarts filed a chapter 7 bankruptcy petition with the United States Bankruptcy Court for the District of Oregon in case number 03-41538 (the "2003 Bankruptcy Case") on October 14, 2003, at 9:53 a.m. Pacific was scheduled as a creditor in the 2003 Bankruptcy Case. The Stewarts received a discharge in the 2003 Bankruptcy Case, and the 2003 Bankruptcy Case was closed as a "no asset" chapter 7 case when the Stewarts' discharge order was entered by this court.

The Stewarts' currently pending chapter 13 case (the "Pending Chapter 13 Case"), filed on January 11, 2006, is the fourth chapter 13 case filed by the Stewarts since the 2003 Bankruptcy Case was closed. The Stewarts have not obtained a discharge in any of their chapter 13 cases.

### Jurisdiction

This court has core jurisdiction to rule in this Adversary

Page 3 - MEMORANDUM OPINION

Proceeding under 28 U.S.C. §§ 1334, 157(b)(1) and 157(b)(2)(I), (K) and (O), and pursuant to United States District Court for the District of Oregon Local Rule 2100.

## Legal Discussion

There appears to be no dispute between the parties, as reflected in the Adversary Proceeding pleadings, that Pacific's claims against the Stewarts personally, based on the Judgments, were discharged in the 2003 Bankruptcy Case. The contested issue is whether the liens of the Judgments on the Stewarts' residence property are valid or void.

The creation of judgment liens is governed by Oregon state law. See Hansen v. Jones, 57 Or. 416 (1910). Under the Oregon statutes and Rules of Civil Procedure in effect in October, 2003,[2] Pacific's Judgments did not attach as liens on the Stewarts' residence property until they were docketed by the Clerk in the court register.

> [F]rom the time of docketing an original or renewed circuit court judgment..., such judgment shall be a lien upon all the real property of the judgment debtor within the county where the same is docketed, or which the judgment debtor may afterwards acquire therein, during the time prescribed in ORS 18.360. Such judgment shall not be a lien upon any real property of the judgment debtor acquired after the effective date of the discharge of the judgment under federal bankruptcy laws. All docketed judgments shall be presumed to have not been discharged until the judgment debtor establishes that the judgment has been discharged. ORS § 18.350(1).

---

[2] The Oregon statutes and Rules of Civil Procedure dealing with the creation of judgment liens were amended by the Oregon state legislature during the 2003 legislative session, but the revised statutory framework did not become effective until January 1, 2004.

Page 4 - MEMORANDUM OPINION

See also ORCP 70B(2): "Notwithstanding ORS 3.070 or any other rule or statute, for purposes of these rules, a judgment is effective only when entered in the register as provided in this rule."

"Docketing the judgment" is an act delegated to the court clerk to perform after "filing," which occurs when the judgment is delivered to the clerk by the judge with the intention that it be entered on the docket. Blackledge v. Harrington, 289 Or. 139, 143, 242 Or. 566, 570-71 (1966). However, ORCP 70B(3) provided that, "[t]he clerk <u>shall enter</u> the judgment in the register within 24 hours, excluding Saturdays and legal holidays, of the time the judgment is filed. When the clerk is unable to or omits to enter judgment within the time prescribed in this subsection, it may be entered any time thereafter." [Emphasis added.]

The Stewarts' position is that even if the Judgments were "filed" on October 10, 2003, they were not entered in the Washington County Circuit Court register, and thus were not effective as judgment liens, until after the Stewarts filed the 2003 Bankruptcy Case. Consequently, the Stewarts argue that the liens of the Judgments are void as violating the automatic stay of § 362(a)(4).

Section 362(a)(4) provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of...any act to create, perfect, or enforce any lien against property of the estate." Interpreting the scope of the automatic stay is a matter of federal law. See In re Gruntz, 202 F.3d 1074, 1087 (9th Cir. 2000) ("[B]ankruptcy courts have the ultimate authority to determine the scope of the automatic stay imposed by 11 U.S.C. § 362(a), subject to federal appellate review.").

Page 5 - MEMORANDUM OPINION

The automatic stay is designed to provide a "breathing space" for the debtor and in chapter 7 cases, the trustee to evaluate and preserve assets for the benefit of the debtor and the bankruptcy estate. Accordingly, the automatic stay "sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and 'any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case.'" In re Pettit, 217 F.3d 1072, 1077 (9th Cir. 2000).

However, there are exceptions to application of the automatic stay, and one of the exceptions recognized by the Ninth Circuit is the exception for purely ministerial acts.

> This exception stems from the common-sense principle that a judicial "proceeding" within the meaning of section 362(a) ends once a decision on the merits has been rendered. Ministerial acts or automatic occurrences that entail no deliberation, discretion, or judicial involvement do not constitute continuations of such a proceeding. In re Pettit, 217 F.3d at 1080.

As described by the First Circuit in In re Soares, 107 F.3d 969, 974 (1st Cir. 1997), a ministerial act

> is one that is essentially clerical in nature....Thus when an official's duty is delineated by, say, a law or judicial decree with such crystalline clarity that nothing is left to the exercise of the official's discretion or judgment, the resultant act is ministerial....Such acts can usefully be visualized as the antithesis of judicial acts, inasmuch as the essence of a judicial act is the exercise of discretion or judgment....
> Virtually, by definition, a judicial proceeding does not conclude until the judicial function is completed, that is until the judicial decision is made. See, e.g., Biderman, 21 F.3d at 528 (holding

Page 6 - MEMORANDUM OPINION

> that the judicial function is completed "at the moment the judge direct[s] entry of judgment"). Frequently, routine scrivening, such as recordation or entry on the docket, follows on the heels of a judicial decision. Such action--taken in obedience to the judge's peremptory instructions or otherwise defined and nondiscretionary--are ministerial and, consequently, do not themselves violate the automatic stay even if undertaken after an affected party files for bankruptcy.
>     See, e.g., <u>Knightsbridge Dev.</u>, 884 F.2d at 148 (suggesting that merely recording a previously decided award would be a "clerical act" and therefore would not infract the automatic stay); <u>In re Capgro Leasing Assocs.</u>, 169 B.R. 305, 315-16 (Bankr. E.D.N.Y. 1994)(stating that "entry of a judgment will constitute a 'ministerial act' where the judicial function has been completed and the clerk has merely to perform the rote function of entering the judgment upon the court's docket")....

Pacific argues that once Judge Nachtigal signed and filed the Judgments, judicial decisionmaking was complete, and what remained was the nondiscretionary, civil rule mandated acts of the Clerk in docketing the Judgments in the court register. Such acts were purely ministerial and consequently did not violate the automatic stay imposed in the 2003 Bankruptcy Case.

While conceding that no discretion was involved when the Clerk docketed the Judgments, the Stewarts argue that the absolute language of Section 362(a)(4) creates an "exception to the exception" for ministerial acts that in effect create a judgment lien. As authority for their position, the Stewarts cite 3 <u>Collier on Bankruptcy</u>, ¶ 362.03[3][e] at p. 362-18  (15th ed. rev. 2005), which states the following:

> Given the importance of the automatic stay, the concept of purely ministerial acts should be narrowly construed to protect only those acts that are clerical in nature and do not involve the exercise of any discretion or judgment. Thus, entry by the clerk of a

Page 7 - MEMORANDUM OPINION

> judgment previously ordered by the court may be a
> purely ministerial act which may be taken without
> violating the stay, while the court's ordering entry
> of a judgment involves a judicial function that goes
> beyond a merely ministerial act and, thus, would be
> subject to the stay. Even the entry of a judgment on
> the judgment docket may be stayed to the extent that
> such entry creates a judgment lien on property of the
> estate.

Case authorities are cited for all of the statements in the foregoing passage from Collier's, except the last statement, which relies solely on the language of Section 362(a)(4). Accordingly, it is a statement by the editors of Collier's as to how they believe a provision of the Bankruptcy Code should be interpreted rather than how it actually is being interpreted by courts.

There are few decisions regarding the extent of the "ministerial acts" exception to the automatic stay, but every decision that I have reviewed that considers the effect of the automatic stay with respect to the nondiscretionary entry or docketing of a judgment after the judgment has been ordered or signed by the court has excepted the act of entering or docketing the judgment from the automatic stay. See, e.g., In re Papatones, 143 F.3d 623, 624-25 (1st Cir. 1998)(Debtor held ineligible for relief under chapter 13 even though the oral judgment that pushed him over the unsecured debt limit was not reduced to writing and entered on the docket until the day after his chapter 13 petition was filed); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522,528 (2d Cir. 1994)("The judicial proceedings were concluded at the moment the judge directed entry of judgment, a decision on the merits having then been rendered....The clerk's subsequent entry of the judgment, after the automatic stay became effective, therefore did not violate section

Page 8 - MEMORANDUM OPINION

362(a)(1)."); Teachers Ins. & Annuity Ass'n v. Butler, 803 F.2d 61, 66 (2d Cir. 1986); In re Capgro Leasing Associates, 169 B.R. 305, 314-16 (Bankr. E.D.N.Y. 1994)("In the instant case, the state Court Clerk's signing and entering of the Judgment upon the State Court's docket were ministerial acts (or rote functions) under Bidermann, since they took place after the judicial function had been completed."); and Teachers Ins. & Annuity Ass'n v. Butler, 58 B.R. 1019, 1022 (S.D.N.Y.), aff'd, 803 F.2d 61 (2d Cir. 1986).

The Stewarts emphasize that most of these decisions consider the impact of Section 362(a)(1) rather than Section 362(a)(4). Section 362(a)(1) provides that the filing of a bankruptcy petition

> operates as a stay, applicable to all entities, of--
> the commencement or continuation, including the
> issuance or employment of process, of a judicial,
> administrative, or other action or proceeding against
> the debtor that was or could have been commenced
> before the commencement of the case under this title,
> or to recover a claim against the debtor that arose
> before the commencement of the case under [Title 11].

I do not find that the scope of Section 362(a)(1) is any less comprehensive than Section 362(a)(4), in spite of the lack of the words "any act...."

I note that the district court in the Butler case did not differentiate among any of the provisions of Section 362 in applying the ministerial acts exception to the automatic stay. See Teachers Ins. & Annuity Ass'n v. Butler, 58 B.R. at 1022. In In re Pettit, the decision in which the Ninth Circuit adopted the ministerial acts exception for this Circuit, the court discusses the automatic stay of Section 362 generally, but affirms the district court's reversal of the

Page 9 - MEMORANDUM OPINION

bankruptcy court's application of Sections 362(a)(2) and 362(a)(3), agreeing that the debtors' interest in contested funds was extinguished when the trial court entered judgment against the debtors and ordered the funds released, even though a check was not delivered to the prevailing party until after the debtors' bankruptcy petition was filed.[3] See 217 F.3d at 1077-80.

I find that the Stewarts' attempt to create an exception to application of the ministerial acts exception to the automatic stay of Section 362, by highlighting differences in the language of Section 362(a)(4) from the language of other subsections of Section 362(a) recognizes a distinction without any real difference.

In the Adversary Proceeding, I am dealing only with issues between the debtors, the Stewarts, and Pacific with regard to the 2003 Bankruptcy Case. The case and the estate were closed on January 30, 2004, without the chapter 7 trustee ever attempting to assert an estate interest in the Stewarts' residence property. Any interest that the estate might have had was abandoned to the Stewarts when the case closed. See § 554(c). Accordingly, there is no estate stake in the Adversary Proceeding.

There are provisions of the Bankruptcy Code that were available

---

[3] Section 362(a)(2) provides that the filing of a bankruptcy petition operates as a stay of the "enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under [Title 11]." Section 362(a)(3) provides that the filing of a bankruptcy petition operates as a stay of "any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate." [Emphasis added.]

Page 10 - MEMORANDUM OPINION

for use by the chapter 7 trustee with respect to Pacific's judgment liens in the 2003 Bankruptcy Case, if the estate had an interest in realizing value from the Stewarts' residence property, for example, Section 547, the preference provision.  No efforts were undertaken by the trustee to avoid Pacific's judgment liens for the benefit of the estate.  This is a dispute between the Stewarts and Pacific only, and the liens of Pacific's Judgments are subordinate to the Stewarts' homestead exemption under Oregon law.

Considering the record in this Adversary Proceeding in light of the preceding analysis of relevant authorities, I find that even though the Stewarts filed their chapter 7 petition in the 2003 Bankruptcy Case before the Clerk docketed Pacific's Judgments, docketing those Judgments after the Washington County Circuit Court judge had signed and filed them was a purely ministerial act that was not enjoined by the automatic stay of Section 362(a)(4).  I find that the liens of the Judgments are not void as violating the automatic stay and continue to exist as encumbrances on the Stewarts' residence property.

## Conclusion

I grant the Stewarts' Motion for Judgment on the Pleadings to the extent that it requests a declaratory judgment that Pacific's claims against the Stewarts individually were discharged in the 2003 Bankruptcy Case.  I otherwise deny the Stewarts' Motion for Judgment on the Pleadings, and I grant Pacific's Motion for Judgment on the Pleadings, finding that Pacific is entitled to a declaratory judgment that the liens of the Judgments on the Stewarts' residence property were not voided by operation of the automatic stay in the 2003 Bankruptcy Case.

Page 11 - MEMORANDUM OPINION

```
 1  Mr. Kavanaugh should submit an appropriate form of judgment within ten
 2  (10) days following entry of this Memorandum Opinion, after submitting
 3  the judgment for approval as to form to Mr. Hoarfrost.
 4                                  ###
 5  cc:     Daniel Hoarfrost
         Michael J. Kavanaugh
```